*Court of Common Pleas, Dauphin County, May* 10*th,* 1854.

THE COMMONWEALTH OF PENNSYLVANIA *v.* MORRISON.

County bonds are within the act of 29th of April, 1844, imposing a State tax upon money at interest.

A county subscribed to the stock of a railroad company and paid its subscription in bonds bearing six per cent. interest, having been authorized by law to do so.    By the same law the railroad was required to pay to the county a dividend of six per cent. on its stock until the road was completed; therefore the company undertook the payment of the interest on these county bonds.    Held, that the county treasurer was bound to see that the State tax on the interest was retained, as required by the act of 1844, and on failure so to do, was liable to a penalty of twelve per cent. on the amount so due the Commonwealth.    The fact that the law which directed him to retain the money was obscure, will not relieve him.

BY THE COURT.—From the facts stated, it appears that the commissioners of Allegheny county subscribed for stock in the Pennsylvania Railroad to the amount of one million of dollars, as authorized by the act of March 27th, 1848, and paid the subscription by giving the bonds of the county, bearing interest at the rate of six per cent. per annum.

On these bonds the county was bound to pay the interest half-yearly, and the company was obliged, under the second section of the same act, to pay the county six per cent. dividends on its stock until the road was completed.    An arrangement was made, for mutual convenience, that the company should pay the interest on the bonds as the same fell due, instead of paying the dividends on the stock, which was done for some years, and probably still continues to be done.

By the 32d section of the act of 29th of April, 1844, all money

[The Commonwealth of Pennsylvania *v.* Morrison.]

at interest, due by solvent debtors, is subject to a tax of three mills on the dollar.   In general, this tax is assessed against the holder of the obligation, and collected as other taxes are collectable; but in the case of any scrip, bond, or certificate of indebtedness issued by certain municipal corporations, a different method of assessment and collection is prescribed.

The first question presented is, do the bonds issued by the county of Allegheny come within that mode of collection?

By the 42d section of the act of April 29th, 1844, it is provided *inter alia,* " It shall be the duty of the treasurer of each county, incorporated city, district, and borough of this commonwealth, on the payment of any dividend or interest to any holder, or agent claiming the same, on any scrip, bond, or certificate of indebtedness, issued by said incorporated city, district, and borough aforesaid, to assess the tax herein made and provided for State purposes, upon the nominal value of each and every said evidence of debt; said tax to be deducted by said treasurer on the payment of any interest or dividend aforesaid, and the same shall be held by him until paid over to the State treasurer, and the said treasurer shall be subject to the same penalties and liabilities now prescribed by existing laws in relation to taxes on bank dividends." This section in the outset, speaks of and enumerates county treasurers as among the officers who are to assess and deduct the taxes due upon the various evidences of debt mentioned; but when it refers to the corporations owing the debts, counties are omitted.   Can the courts by construction supply that omission?   It is obviously our duty to so construe the law as to carry into effect the general intention of the legislature.   Cases are often brought within the intention of a statute which do not come within the letter, and those which come within the letter, but manifestly not within the intention, are construed not to be covered by it.   It is the duty of courts in interpreting an act to give effect, if possible, to every word contained within it, and if the intention of the legislature can be collected from the whole act, to carry that into effect.   Where a case manifestly comes within the mischief intended to be remedied by the legislature, and would have been covered by its words, if foreseen, it furnishes sufficient warrant to bring it within the act. The mischief intended to be provided for by this act, was that a large amount of money at interest within the State escapes taxation.   The scrip, bonds, and other evidences of debt, issued by counties, cities, incorporated districts, and boroughs, fell into the hands of persons not residing within the State, often of those living in foreign countries, and could not be assessed under the former laws.   The legislature desired to meet the evil, and directed that the State tax should be retained out of the interest by the officer whose duty it was to pay it.   The same course of

collection was prescribed in regard to the State stock, or that of corporations guaranteed and paid by the commonwealth, which was to be deducted by the State treasurer from the annual interest.

The officers of banks were required to deduct the State tax from the dividends paid over to the stockholders, so that it would seem that in almost every case, except that of private debtors or mere *private* corporations, the mode of retention was resorted to, and the sum ordered to be retained was directed to be paid by proper officers into the State treasury. In the present act, the word " *counties* " has been omitted, where it comes to speak of the evidences of debt issued, which has most probably occurred in transcribing the bill, or possibly in printing the law after its passage. But we cannot give effect to every word of this act, should we fail to apply it to counties, as well as cities, boroughs, and districts, when we find that it is made the duty of the county treasurer to assess and retain a tax, and yet no indebtedness is mentioned from which it is to be retained. We cannot believe that the legislature intended to secure the State tax on the indebtedness of every petty borough within the commonwealth, whose obligations could, at most, amount to a few thousand dollars, and trust to accident for the collection of that due from the great counties of Philadelphia and Allegheny, whose debts run up to millions.

We are therefore of the opinion that had the treasurer of Allegheny county paid the interest due on these bonds, he was bound by law to deduct the State tax therefrom.

Will the arrangement by which the railroad company paid the interest, instead of it being paid by the county treasurer, change the liability? It is very true that the county commissioners and the officers of the company entered into an agreement, not provided for by law, to have the interest on the bonds paid in Philadelphia instead of at the treasury of Allegheny county, and to substitute such payment for that on the dividends of stock held by the county. Over this arrangement the treasurer had no control; he was not required to be privy to it. But it is conceded as part of the case that he *knew* of it, and that the company's treasurer was paying the interest on these bonds as the same fell due. It then became his duty to secure the State tax by notifying the treasurer of the railroad company to deduct it from the coupons when presented by the holders. As to this payment, the treasurer of the company became his agent, and the county treasurer is liable for neglect of duty on the part of the person employed.

A different conclusion would leave the commonwealth without remedy for the collection of this tax. It cannot proceed against the railroad company—it is not recognized as a debtor of the State; nor against the county of Allegheny in its corporate

capacity, for it has not received this money into its treasury nor been benefited by it. The money has illegally gone into the pockets of the holders of the coupons. There is no privity or connection with the county commissioners; they are not officers recognized at the State treasury department, and if liable at all, it must be in their private, individual capacity, for making an illegal contract with the railroad company, by which the State has lost its taxes. This would certainly be a new and anomalous proceeding to collect a State tax. The legal and obvious remedy is against the county treasurer, who was bound to secure the taxes due to the commonwealth.

It has been contended that no State taxes could be properly deducted from the coupons attached to these bonds; that they are negotiable, and pass from hand to hand as money. Nothing, in our opinion, can be further from the fact. They are in no sense negotiable paper; they have no words of negotiability; are not payable to bearer, nor order, nor even assignable, and express on their face that they are for the interest due on a certain bond issued by Allegheny county, and although made payable at the office of the Pennsylvania Railroad Company in Philadelphia, yet the holder is bound to know that they are subject to a deduction of the State tax. The tax is in terms to be deducted from the interest, when the treasurer is called upon to pay the same. It is not charged against the principal in the hands of the holder of the bond, but against the interest. If that is never demanded, or paid, no tax can be collected, for it is only to be "*deducted.*" If the county of Allegheny issued bonds to various holders, to the amount of a million of dollars, all bearing interest, yet but one hundred thousand dollars of the bonds were presented at the treasury during the year 1850, and interest demanded, the treasurer can be called upon to account for the State taxes on no more than the six thousand dollars of interest paid by him. He can *deduct* it from no more; and when the arrears of interest due on the other nine hundred thousand dollars is paid, the taxes must be deducted.

From the statement made by Mr. Baem, it appears that for the year 1850, they paid out interest on these bonds to the amount of $16,785, the State tax on which is $839.25, and for the year 1851 the sum of $37,173, the State tax amounting to $1858.65. With this amount the defendant is chargeable, according to the principles already stated, and the only remaining question to be determined is as relates to the interest or penalty for not paying over the money. The act of 1844, after directing the retention of this tax and its payment into the State treasury, declares " the said treasurer shall be subject to the same penalties and liabilities now prescribed by existing laws in relation to taxes on bank dividends."

[The Commonwealth of Pennsylvania *v.* Morrison.]

The only act prescribing a penalty for not paying over the tax on bank dividends that we can discover, is the 24th article of the 3d section of the act of March 25th, 1824, which declares, that the bank neglecting to pay the tax, "shall be liable to interest on the amount so due the commonwealth at the rate of *twelve per cent. per annum.*" It appears hard in the present case, under all the circumstances, to impose a penalty on the treasurer for not paying over money which in fact did not come into his hands, and where the law under which he acted was lame and obscure. But if the court is bound under the facts conceded to charge him with the principal, we do not see on what ground he can be absolved from paying the prescribed rate of interest. It is true that the Easton Bank was relieved, but perhaps the only sound reason given for that decision is, that the penalty was not imposed for a failure to pay the increased tax on dividends. The other reason given, that the act of 1811 only gives simple interest to commence three months after the date of settlement, is in terms overruled in the second decision of The Commonwealth *v.* Porter, not yet reported. To the additional reason that it was uncertain whether a liability existed, we cannot lend our sanction. It is not the point of the case, nor binding on us as authority. The law is considered as always *certain,* however uncertain its decisions may be. Every one is bound to know it, especially if he voluntarily takes on himself a trust or duty under it. The whole scope of the previous enactments, as well as the act of 1844, contemplated a settlement of the county treasurer's account at the State department; and as he must come under the review of that tribunal, if the penalty is to be imposed or enacted at all, it must be imposed by it. The account must be settled there, before the treasurer can be sued; and in that settlement he must be charged with the interest at the rate of twelve per cent., or forever absolved. When the case is brought into this court by appeal, we must be governed by the same law, and charge the appellant with all that the department could lawfully charge against him. As there has been no final settlement of this account by the department, but the balance struck has been appealed from, there can be no suspension of interest for three months, but the same will be computed from the end of the respective years until the rendition of this judgment.

Judgment is directed to be entered against the defendant for the sum of $3562.28, this 9th day of May, 1854.

*Fisher, for plaintiff.*

*Alricks, for defendant.*